FILED
CLERK, U.S. DISTRICT COURT

08/19/20

CENTRAL DISTRICT OF CALIFORNIA
BY: ____DM____ DEPUTY

NICOLA T. HANNA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division
ROBERT F. CONTE
Assistant United States Attorney
Tax Division
     United States Attorney's Office
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6607
     Facsimile: (213) 894-0115
     E-mail:   Robert.Conte@usdoj.gov
NANETTE L. DAVIS
Senior Litigation Counsel (DC Bar No. 442136)
MARK F. DALY
Senior Litigation Counsel (MA Bar No. 640581)
Tax Division, Northern Criminal Enforcement Section
United States Department of Justice
     150 M Street NE
     Washington, DC 20002
     Telephone: (202) 514-8030
     Facsimile: (202) 616-1786
     E-mail:   Nanette.L.Davis@usdoj.gov
               Mark.F.Daly@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20- 2:20-cr-00362-ODW |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT STRACHANS SA IN LIQUIDATION |
| v. | |
| STRACHANS SA IN LIQUIDATION, | |
| Defendant. | |

     1.   This constitutes the binding plea agreement between STRACHANS SA IN LIQUIDATION ("defendant" or "Strachans") and the United States Attorney's Office for the Central District of California and the United States Department of Justice, Tax Division

14211626.1

1   (together, "the Offices") in the above-captioned case.  This

2   agreement is limited to the Offices and cannot bind any other

3   federal, state, local, or foreign prosecuting, enforcement,

4   administrative, or regulatory authorities.

5                    RULE 11(c)(1)(C) AGREEMENT

6       2.   Defendant understands that this agreement is entered into

7   pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

8   Accordingly, defendant understands that, if the Court determines that

9   it will not accept this agreement, absent a breach of this agreement

10  by defendant prior to that determination and whether or not defendant

11  elects to withdraw any guilty plea entered pursuant to this

12  agreement, this agreement will, with the exception of paragraph 19

13  below, be rendered null and void and both defendant and the Offices

14  will be relieved of their obligations under this agreement.

15  Defendant agrees, however, that if defendant breaches this agreement

16  prior to the Court's determination whether or not to accept this

17  agreement, the breach provisions of this agreement, paragraphs 21 and

18  22 below, will control, with the result that defendant will not be

19  able to withdraw any guilty plea entered pursuant to this agreement,

20  the Offices will be relieved of all of its obligations under this

21  agreement, and the Court's failure to follow any recommendation or

22  request regarding sentence set forth in this agreement will not

23  provide a basis for defendant to withdraw defendant's guilty plea.

24                    DEFENDANT'S OBLIGATIONS

25      3.   Defendant agrees to:

26           a.   Give up the right to indictment by a grand jury, and

27  at the earliest opportunity requested by the Offices and provided by

28  the Court, to appear and plead guilty to a one-count Information

                              2

charging a violation of 18 U.S.C. § 371 in the form attached to this agreement as Exhibit A or a substantially similar form.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement, and affirmatively recommend to the court that it impose sentence in accordance with paragraph 14 of this agreement.

d.   Appear for all court appearances, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the Offices.

4.   Defendant further agrees to cooperate fully with the Offices, the Internal Revenue Service (pursuant to the separate discussions between the IRS and the defendant), and, as directed by the Offices, any other federal, state, or local prosecuting, enforcement, administrative, or regulatory authority.  This cooperation requires defendant to:

a.   Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.    Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the Offices or compelled by subpoena or court order.

c.    Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the Offices, or its designee, inquires, subject to relevant provisions of law.

<u>THE OFFICES' OBLIGATIONS</u>

5.    The Offices agree to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement and affirmatively recommend to the court that it impose sentence in accordance with paragraph 14 of this agreement.

c.    Not to further criminally prosecute defendant or its principals for any additional violations known to the Offices at the time of the plea, arising out of the information provided by the defendant, and defendant's conduct (i) described in the Information or (ii) described in the statement of facts provided in Exhibit B. Defendant understands that the Offices is free to criminally prosecute defendant, its principals, and or related companies for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider any uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

CORPORATE AUTHORIZATION

6.   Defendant represents that it is authorized to enter into this agreement.  On or before the change of plea hearing pursuant to this agreement, defendant shall provide the Offices and the Court with a notarized legal document certifying that the defendant is authorized to enter into and comply with all of the provision of this agreement.  Such legal document(s) shall designate a company representative who is authorized to take the actions specified in this agreement, and shall also state that all legal formalities for such authorizations have been observed.

ORGANIZATIONAL CHANGES AND APPLICABILITY

7.   This agreement shall bind defendant, its successor entities (if any), parent companies, and any other person or entity that assumes the liabilities contained herein ("successors-in-interest"). Defendant, or its successors-in-interest, if applicable, shall provide the Offices and the United States Probation Office for the Central District of California with immediate notice of any name changes, business reorganization, sale or purchase of assets, divestiture of assets, or similar action impacting their ability to pay the fine or affecting this agreement.  No change in name, change in ownership, merger, change of legal status, sale or purchase or assets, or similar action shall alter defendant's responsibilities under this agreement.  Defendant shall not engage in any action to seek to avoid the obligations and conditions set forth in this agreement.

NATURE OF THE OFFENSES

8.  Defendant understands that for defendant to be guilty of the crime charged in count one of the Information, that is, a

conspiracy to defraud the United States, in violation of Title 18, United States Code, Section 371, the following must be true:

a.   From in or about 1982 to in or about January 2014, defendant and others known and unknown, including clients living in the Central District of California, knowingly did combine, conspire, confederate and agree together to defraud the United States;

b.   Defendant knew the purpose of the agreement;

c.   With knowledge of the purpose of the agreement, Defendant deliberately joined; and

d.   During the existence or life of the agreement, Defendant knowingly performed one of the overt acts charged in the Information and did so in order to further or advance the purpose of the agreement.

9.   Defendant admits that defendant is, in fact, guilty of the offense as described in count one of the Information.

<u>PENALTIES AND RESTITUTION</u>

10.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is: a five-year period of probation; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $400. Defendant agrees to pay the special assessment at or before the time of sentencing.

11.   The parties agree that, in light of the extensive cooperation with the U.S. Department of Justice and the Internal Revenue Service, the complexity of determining restitution, and its inability to pay restitution, and the applicability of 18 U.S.C. § 3663(a)(1)(B), no restitution will be owed.

FACTUAL BASIS

12.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the Offices agree to the statement of facts attached hereto as Exhibit B hereto and incorporated by reference herein, and agree that the statement of facts is sufficient to support a plea of guilty to the charge described in this agreement as well as the sentence and fine specified in this agreement. The attached statement of facts is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING AGREEMENT

13.   Defendant and the Offices agree and stipulate that Chapter Eight of the United States Sentencing Guidelines apply in determining the fine for the defendant.  Defendant understands that in determining defendant's sentence, the Court is required to consider the factors set forth in Title 18, United States Code, Section 3553(a), including the kinds of sentence and sentencing range established under the Sentencing Guidelines.  Defendant also understands that, in arriving at the penalties set forth below, the Offices has considered defendant's efforts to cooperate.

14.   Pursuant to U.S.S.G. § § 8D1.1 and 8D1.2 and the factors set forth in Title 18, United States Code, Section 3553(a), including the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect the law, to provide just punishment for the offense, and to afford

adequate deterrence to criminal conduct, the parties agree that defendant shall be sentenced as follows:

a.  Criminal Fine: Defendant shall pay a total criminal fine of $500,000 (five hundred thousand dollars) as to the count of conviction.  The criminal fine shall be paid within fourteen days of the entry of judgment by wire transfer to the Clerk of the United States District Court for the Central District of California, and confirmation of the completed wire transfer shall be provided to the Offices.

b.  The parties further agree that, if any funds currently custodied in SG Kleinwort Hambros Bank (Jersey) for the benefit of U.S. clients come into the permanent possession of Strachans or any related entity, then those funds will be paid over to the United States as an additional fine.

c.  Special Assessment: Defendant shall pay a special assessment of $400.

WAIVER OF CONSTITUTIONAL RIGHTS

15.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.  The right to persist in a plea of not guilty.

b.  The right to a speedy and public trial by jury.

c.  The right to be represented by counsel – and if necessary have the court appoint counsel - at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the court appoint counsel – at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF STATUTE OF LIMITATIONS</u>

Having been fully advised by defendant's attorney regarding application of the statute of limitations to the offense to which defendant is pleading guilty, defendant hereby knowingly, voluntarily, and intelligently waives, relinquishes, and gives up (a) any right that defendant might have not to be prosecuted for the offense to which defendant is pleading guilty because of the expiration of the statute of limitations for that offense prior to the filing of the information alleging that offense; and (b) any defense, claim, or argument defendant could raise or assert that prosecution of the offense to which defendant is pleading guilty is barred by the expiration of the applicable statute of limitations, pre-indictment delay, or any speedy trial violation.

## WAIVER OF APPEAL OF CONVICTION

16.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

17.   Defendant agrees that, provided the Court imposes the sentence specified in paragraph 14 above, defendant gives up the right to appeal any portion of that sentence.

18.   The Offices agree that, provided the Court imposes the sentence specified in paragraph 14 above, the Offices give up their respective rights to appeal any portion of that sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

19.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the Offices will be relieved of all of their obligations under this agreement, including in particular their obligations regarding the use of Cooperation Information; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation Information or any evidence derived from any Cooperation Information

should be suppressed or is inadmissible; and (c) should the Offices choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

20.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an attorney for the Tax Division of the Department of Justice.

<u>BREACH OF AGREEMENT</u>

21.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and the prosecutors, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the Offices may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the Offices to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the Offices in writing.  If the Offices declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.    If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b.    The Offices will be relieved of all their obligations under this agreement; in particular, the Offices: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crimes to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the Offices would otherwise have been obligated not to criminally prosecute pursuant to this agreement; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c.    The Offices will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.    In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim

under the United States Constitution, any statute, Rule 410 of the
Federal Rules of Evidence, Rule 11(f) of the Federal Rules of
Criminal Procedure, or any other federal rule, that any Cooperation
Information, any Plea Information, or any evidence derived from any
Cooperation Information or any Plea Information should be suppressed
or is inadmissible.

22.   Following the Court's finding of a knowing breach of this
agreement by defendant, should the Offices choose to pursue any
charge or any civil, administrative, or regulatory action that was
either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of
limitations is tolled between the date of defendant's signing of this
agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on
the statute of limitations, any claim of pre-indictment delay, or any
speedy trial claim with respect to any such action, except to the
extent that such defenses existed as of the date of defendant's
signing this agreement.

c.   Defendant agrees that: (i) any statements by
defendant, under oath, at the guilty plea hearing (if such hearing
occurred prior to the breach; (ii) the agreed-to factual basis
statement in this agreement; and (iii) any evidence derived from such
statements, shall be admissible against defendant in any such action
against defendant, and defendant waives and gives up any claim under
the United States Constitution, any statute, Rule 410 of the Federal
Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
Procedure, or any other federal rule, that the statements or any

evidence derived from the statements should be suppressed or are inadmissible.

### COURT AND PROBATION OFFICE NOT PARTIES

23.  Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the Offices' sentencing recommendations or the parties' agreements to facts, sentencing factors, or the sentence.  Defendant understands that the Court will determine the facts, sentencing factors, and other considerations relevant to sentencing and will decide for itself whether to accept and agree to be bound by this agreement.

24.  Defendant understands that both defendant and the Offices are free to: (a) supplement the facts by supplyingp relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations and sentence referenced in paragraph 14 are consistent with the facts of the case.  While this paragraph permits both the Offices and the defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the Offices' obligations not to contest the facts agreed to in this agreement.

1
NO ADDITIONAL AGREEMENTS

2     25.  Defendant understands that, except as set forth herein,

3 there are no promises, understandings, or agreements between the

4 Offices and defendant or defendant's attorney, and that no additional

5 promise, understanding, or agreement may be entered into unless in a

6 writing signed by all parties or on the record in court.

7
PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

8     26.  The parties agree that this agreement will be considered

9 part of the record of defendant's guilty plea hearing as if the

10 entire agreement had been read into the record of the proceeding.

11 AGREED AND ACCEPTED

12

13 UNITED STATES DEPARTMENT OF JUSTICE
TAX DIVISION

14 RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney
15 General

16

17 _____          August 17, 2020
NANETTE L. DAVIS                          _____
18 Senior Litigation Counsel               Date
MARK F. DALY
19 Senior Litigation Counsel

20

21 UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

22 NICOLA T. HANNA
23 United States Attorney
THOMAS D. COKER
Assistant United States Attorney
24 Chief, Tax Division

25

26

27

28

15

1

<u>CERTIFICATION OF DEFENDANT</u>

2    I have been authorized by defendant STRACHANS SA in Liquidation

3 ("defendant") to enter into this agreement on behalf of defendant. I

4 have read this agreement in its entirety.  I have had enough time to

5 review and consider this agreement, and I have carefully and

6 thoroughly discussed every part of it with my attorney.  I understand

7 the terms of this agreement, and I voluntarily agree to those terms

8 on behalf of defendant.  I have discussed the evidence with

9 defendant's attorney, and defendant's attorney has advised me of

10 defendant's rights, of possible pretrial motions that might be filed,

11 of possible defenses that might be asserted either prior to or at

12 trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of

13 relevant Sentencing Guidelines provisions, and of the consequences of

14 entering into this agreement.  No promises, inducements, or

15 representations of any kind have been made to me or to defendant

16 other than those contained in this agreement.  No one has threatened

17 or forced me or defendant in any way to enter into this agreement.  I

18 am satisfied with the representation of defendant's attorney in this

19 matter, and I am pleading guilty on behalf of defendant because

20 defendant is guilty of the charge and wishes to take advantage of the

21 promises set forth in this agreement, and not for any other reason.

22 PHILIP JEPSON EGGLISHAW                    AUGUST 14, 2020

23 NAME:                                      Date

24 TITLE: LIQUIDATOR

25 Authorized Representative of
   Defendant STRACHANS SA IN
26 LIQUIDATION

27

28

16

1                  <u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2          I am defendant STRACHANS SA IN LIQUIDATION's attorney.  I have

3   carefully and thoroughly discussed every part of this agreement with

4   my client.  Further, I have fully advised my client of his rights, of

5   possible pretrial motions that might be filed, of possible defenses

6   that might be asserted either prior to or at trial, of the sentencing

7   factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing

8   Guidelines provisions, and of the consequences of entering into this

9   agreement.  To my knowledge: no promises, inducements, or

10  representations of any kind have been made to my client other than

11  those contained in this agreement; no one has threatened or forced my

12  client in any way to enter into this agreement; my client's decision

13  to enter into this agreement is an informed and voluntary one; and

14  the factual basis set forth in this agreement is sufficient to

15  support my client's entry of guilty pleas pursuant to this agreement.

16  _____      August 14, 2020
17  WILLIAM A. BURCK                     _____
    MICHAEL LIFTIK                       Date
18  Attorney for Defendant STRACHANS
    SA IN LIQUIDATION

# EXHIBIT A

1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,        No. CR 20-

11          Plaintiff,               I N F O R M A T I O N

12          v.                       [18 U.S.C. § 371: Conspiracy to
                                     Defraud the United States]
13   STRACHANS SA IN LIQUIDATION,

14          Defendant.

15

16        The United States Attorney charges:

17

18                          [18 U.S.C § 371]

19   A.   INDIVIDUALS AND ENTITIES

20        At times relevant to this Information:

21        1.   Defendant STRACHANS SA IN LIQUIDATION was a Jersey-based

22   accounting and financial services company that assisted U.S.

23   taxpayer-clients and others in evading taxes through the use of

24   offshore trusts and entities and offshore bank accounts.  Initially

25   operating as a legitimate accounting firm, in approximately 1987

26   defendant STRACHANS began offering offshore structures and bank

27   accounts and related financial services to its clients.  At

28

approximately that same time, defendant STRACHANS employees began to travel to the United States for the purpose of marketing its services to U.S. taxpayers.

2.    Defendant STRACHANS moved its operations to Geneva, Switzerland, in or about 1999 to take advantage of Swiss banking secrecy for itself and its clients.  In 2009, defendant STRACHANS began doing business as Elston Management.

3.    Co-Conspirator-1 was a citizen of the Bailiwick of Jersey, Channel Islands, and a principal of defendant STRACHANS.

4.    Co-Conspirator-2 was the brother of Co-Conspirator-1 and also a citizen of the Bailiwick of Jersey and principal of defendant STRACHANS.

5.    Co-Conspirator-3 was a citizen of the Bailiwick of Jersey, and first an employee and then a minority shareholder of defendant STRACHANS.

6.    The Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury responsible for administering and enforcing the tax laws of the United States and collecting the taxes owed to the Treasury of the United States by its citizens.

7.    United States citizens, resident aliens, and legal permanent residents had an obligation to report the following information to the IRS on Form 1040, Schedule B, Part III, Line 7a, by checking a "Yes" or "No" box: "At any time during [the calendar year], did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account?"  If the answer to Line 7a was "Yes," then Line 7b required the taxpayer to enter the name of the foreign country in which the financial account

2

was located.

8.    United States citizens, resident aliens, and legal permanent residents had an obligation to report all income earned from foreign financial accounts on their tax returns and pay the taxes due on that income.

9.    United States citizens, resident aliens, and legal permanent residents who had a financial interest in, or signature authority over, one or more financial accounts in a foreign country with an aggregate value of more than $10,000 at any time during a particular year were required to file with the Department of the Treasury a Report of Foreign Bank and Financial Accounts on Form TD F 90-22.1 ("FBAR").  Generally, the FBAR for the applicable year was due by June 30 of the following year.

10.   An "undeclared account" was a bank or financial account maintained in a foreign country that was not reported to the United States government on a tax return or on an FBAR.

B.    OBJECT OF THE CONSPIRACY

11.   From in or about 1987 until in or about November 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant STRACHANS knowingly and willfully conspired and agreed with various United States taxpayers, their representatives and others, both known and unknown to the United States Attorney, to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the United States Department of Treasury in the ascertainment, compilation, assessment, and collection of the revenue, that is, federal income taxes of the U.S. taxpayers, in violation of 18 U.S.C. § 371.

C.   <u>MANNER AND MEANS OF THE CONSPIRACY</u>

12.   The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

a.   traveling to the United States until 2007 for the purpose of marketing defendant STRACHANS's services to U.S. taxpayer-clients;

b.   opening and maintaining offshore bank accounts for the benefit of approximately 90 U.S. taxpayer clients, including accounts at banks in Jersey and at Cornèr Bank and UBS in Switzerland;

c.   assisting clients in establishing and using sham entities, including offshore shell companies, as nominee beneficial owners of the undeclared accounts;

d.   providing financial services to the clients through the use of various entities related to defendant STRACHANS, including Elston Management SA, Roker Trustees (Jersey) Ltd., Overseas Trading and Promotion Ltd., Ferndale Worldwide, Ltd., and Jilette Company Ltd.

e.   using STRACHANS-related entities as trustees on offshore trusts for U.S. taxpayer-clients and conduits for the repatriation of funds from undeclared accounts to the United States, in some instances utilizing a Monagasque citizen as a nominee trust settlor;

f.   facilitating withdrawals of funds from the undeclared accounts by either providing hand-delivered cash in the United States or using defendant STRACHANS' and related entities' bank accounts in Switzerland and elsewhere, and correspondent bank accounts in the United States;

g.   facilitating the repatriation of offshore funds for

4

U.S. taxpayer-clients through the use of bogus mortgage and false invoice and certificate of deposit schemes, sometimes utilizing a STRACHANS-related company called Ambassador Discount Company;

    h.   facilitating the repatriation of offshore funds through the use of back-to-bank loans;

    i.   structuring transfers of funds to evade currency transaction reporting requirements;

    j.   submitting false Forms W8-Ben-E to offshore banks regarding their U.S. taxpayer-clients' bank accounts;

    k.   using a London post office box and a London-based lawyer to provide mail delivery services;

    l.   meeting with U.S. taxpayer-clients in offshore locales to give them an opportunity to review account statements; and

    m.   providing offshore credit and debit cards in initially through a U.K. bank that were held by a STRACHANS nominee company called Jillette, and later through Cornèr Bank (Switzerland) to the U.S. taxpayer-clients to assist them in accessing their funds in the undeclared accounts without creating a paper trail in the United States.

D.   <u>OVERT ACTS</u>

    13.   On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendant STRACHANS and other co-conspirators committed various overt acts within the Central District of California, including, but not limited to, the following:

    <u>Overt Act No. 1</u>:   In or about May 2000, defendant STRACHANS formed separate offshore trusts for a U.S. taxpayer-client ("Client 1"), and his business partner, a U.K. taxpayer-client ("Client 2"). Defendant STRACHANS also formed a third offshore trust for their

1  Australian advisor.

2       Overt Act No. 2:  In or about October 2007, with the knowledge

3  and consent of the clients, defendant STRACHANS transferred the

4  balances in the offshore bank accounts for Clients 1 and 2 to an

5  account at UBS in Switzerland on which Co-Conspirator 1 was listed as

6  the beneficial owner, in order to assist in continuing to conceal

7  Clients 1 and 2's ownership of the offshore funds.

8       Overt Act No. 3:  On or about February 8, 2010, Co-Conspirator-1

9  received £5,916,000 into an account in a nominee name at UBS AG on

10  behalf of Clients 1 and 2.

11       Overt Act No. 4:  On or about April 11, 2013, Co-Conspirator 1

12  received 50,000 Swiss francs from a nominee account at UBS AG for

13  services rendered to undeclared U.S. taxpayer-clients.

14       Overt Act No. 5:  On or about June 5, 2014, Co-Conspirator 1

15  made several stock investments worth over $500,000 on behalf of

16  undeclared U.S. taxpayer-clients in a nominee account at UBS AG.

17

18                              NICOLA T. HANNA
                                United States Attorney
19
20                              Scott M. Garringer
                                Deputy Chief, Criminal Division For:
21                              BRANDON D. FOX
                                Assistant United States Attorney
22                              Chief, Criminal Division

23                              THOMAS D. COKER
                                Assistant United States Attorney
24                              Chief, Tax Division

25
                                NANETTE L. DAVIS
26                              MARK F. DALY
                                Senior Litigation Counsel
27                              U.S. Department of Justice

28

# EXHIBIT B

**Exhibit B**

**STATEMENT OF FACTS**

**INTRODUCTION**

1.  Strachans SA (Strachans) was incorporated in 1999 and became active in 2000.  It was based in Geneva, Switzerland. Strachans was created to take over the business of its sister company, Strachan Services Limited ("SSL") which was based in Jersey, Channel Islands.  After SSL's business was transferred from Jersey to Geneva, SSL ceased to provide any offshore services.

2.  Strachans was an independent firm providing administration to offshore structures for clients residing in a range of countries, including citizens and residents of the United States ("U.S.-based clients").  This included the formation of trusts and off-shore companies, administration, bookkeeping, and accounting but did not include the provision of banking services or the giving of investment advice.  These services were predominantly provided by Swiss Banks.

3.  Strachans was beneficially owned by three shareholders, Richard Jepson Egglishaw, Terence Ahier Jehan and Philip Jepson Egglishaw (collectively the "Strachans Shareholders").  It was licensed to provide financial services and regulated by the Association Romande Des Intermediaires Financiers ("ARIF").  In December 2011, Strachans was placed in liquidation, and Philip J. Egglishaw was appointed as the liquidator.

4.  Strachans charged for its services on a time-cost basis for administering a client's accounts and not, with one exception, based on a client's assets under management ("AUM").  Accordingly, records were not maintained to reliably calculate the AUM for U.S.-based clients. Strachans provided services to approximately 60 U.S.-based clients in undeclared accounts. While the majority of those accounts contained less than $1 million under administration, approximately seven accounts contained between $1-$10 million under administration. There were approximately five accounts above $10 million, the largest being approximately $25 million under administration.

5.  Strachans earned approximately $4.7 million in gross fees between the years 2000 to 2015 attributable to these undeclared U.S. taxpayer accounts.

**U.S. INCOME TAX AND REPORTING OBLIGATIONS**

6.    U.S. citizens, resident aliens, and legal permanent residents have an obligation to report all income earned from foreign bank accounts on their tax returns and to pay the taxes due on that income.  For the tax year 1976 forward, U.S. citizens, resident aliens, and legal permanent residents had an obligation to report to the Internal Revenue Service ("IRS") on the Schedule B of a U.S. Individual Income Tax Return, Form 1040, whether that individual had a financial interest in, or signature authority over, a financial account in a foreign country in a particular year by checking "Yes" or "No" in the appropriate box and identifying the country where the account was maintained.

7.    Since 1970, U.S. citizens, resident aliens, and legal permanent residents who have had a financial interest in, or signature authority over, one or more financial accounts in a foreign country with an aggregate value of more than $10,000 at any time during a particular year have been required to file with the Department of Treasury a Report of Foreign Bank and Financial Accounts, FinCEN Form 1 14, formerly known as Form TD F 90-22.1 (the "FBAR").

8.    An "undeclared account" was a financial account owned by an individual who was a U.S. citizen, resident alien, or legal permanent resident and maintained in a foreign country that had not been reported by the individual account owner to the U.S. government on an income tax return or other form and an FBAR as required.

9.    Since 1935, Switzerland has maintained criminal laws that ensure the secrecy of client relationships at Swiss Banks. While Swiss law permits the exchange of information in response to administrative requests made pursuant to a tax treaty with the United States and certain legal requests in cases of tax fraud, Swiss law otherwise prohibits the disclosure of identifying information without client authorization.  Because of the secrecy guarantee that they created, these Swiss criminal provisions have historically enabled U.S. taxpayer-clients to conceal their Swiss bank accounts from U.S. authorities.

10.   In 2008, Swiss bank UBS AG ("UBS") publicly announced that it was the target of a criminal investigation by the IRS and the United States Department of Justice and that it would be exiting and no longer accepting certain U.S. clients.  On February 18, 2009, the Department of Justice and UBS filed a deferred prosecution agreement in the Southern District of Florida in which UBS admitted that its

cross-border banking business used Swiss privacy law to aid and assist U.S. clients in opening and maintaining undeclared assets and income from the IRS. Since 2008, several other Swiss Banks have publicly announced resolutions with the Department of Justice or that they were or are the targets of similar criminal investigations and that they would likewise be exiting relationships with and not accepting certain U.S. clients. These cases have been closely monitored by banks and other financial institutions operating in Switzerland, including Strachans, since at least August 2008.

### THE OFFENSE CONDUCT

11. From at least 2001 through 2014, Strachans assisted certain U.S.-based clients, including one or more taxpayers residing in the Central District of California, in evading their U.S. tax obligations, which led them to file false federal tax returns with the IRS, and to otherwise hide from the IRS assets maintained overseas. The Strachans Shareholders sought referrals of U.S.-based clients from other professionals (predominantly lawyers and accountants based in the United States). However, the daily administration of the offshore structures was carried out by employees of Strachans.

12. In particular, Strachans helped U.S.-based clients conceal from the IRS their beneficial ownership of undeclared assets maintained in depository financial institutions located in various countries, predominantly Switzerland, Jersey and the United Kingdom. Specifically, in furtherance of a scheme to help U.S.-based clients hide assets from the IRS and evade taxes, Strachans did the following:

   a. Strachans managed undeclared assets for U.S.-based clients that were held by sham entities (or structures). These structures, which had no business purpose, served as the nominal account holders of accounts that, in reality, belonged to the U.S.-based clients. Strachans allowed U.S.-based clients to maintain their accounts in this fashion despite knowing that the structures were being used to conceal the identities of the U.S.-based clients, who were the true beneficial owners of the assets held by these entities. Strachans signed a number of IRS Forms W-8BEN, which is a certificate of status of beneficial owner for purposes of United States tax withholding, that falsely declared the beneficial ownership as being non-U.S. when clearly it was.

3

- As an example, Client A, a U.S.-based client living within this District sold his interest, worth in excess of $25 million, in an overseas entity involved in the entertainment industry. Client A directed the funds from this sale to be diverted to an offshore structure set up specifically by Strachans for him. This allowed the funds from the sale of the overseas entity to evade U.S. taxes.

- Client A's funds placed in the structure were invested in offshore accounts in a range of securities, many U.S.-based.  Client A was able to access the funds in the offshore entity by acquiring real estate for his personal use, using credit cards that were owned by and paid by the structure, and meeting personal expenses such as private jets and collecting musical instruments using funds from the structure. All of this was done in such a way to evade detection by the IRS and avoid taxes required by the Internal Revenue Code.

b.   Strachans facilitated frequent one-way cash collections by U.S.-based clients knowing that they had no intention of declaring the funds to the IRS.

Typically, the U.S. client would visit Strachans in Geneva to collect what was usually $10,000 in cash and sign a receipt for the money. Also, a member of Strachans would sometimes take the cash to London for collection there by the client and on a few occasions, money was taken to the U.S. by a member of Strachans and provided to the U.S. client in the United States.

Strachans also brokered a limited number of two-way cash swaps within the United States whereby one client would transfer funds to one of the Strachans representatives for deposit offshore, and the Strachans representative would then use those funds to make an undeclared transfer to another U.S. client from those offshore funds.  Strachans similarly provided the clients with debit or credit cards drawn from Swiss banks as a means of secretly accessing their offshore funds.

c.   Other shams were adopted in order to allow U.S.-based clients to access their undeclared offshore funds in a secret manner.  These included fake loans, consultancy agreements, and dummy invoicing.

- Fake loans were used to allow U.S.-based clients to "borrow" their own money from their offshore funds

via a Strachans entity to acquire assets such as real estate in their own name. The Strachans' entity was used to avoid a direct link between the U.S.-based client and his offshore funds. To make these false loans look real, the U.S.-based client would sign a loan agreement with the Strachans entity detailing terms and conditions such as security, rate of interest and the repayment date. In some cases, loans were not even repaid.

- Consultancy agreements were used to allow U.S.-based clients to be employed by a Strachans entity and receive a retainer (normally for no actual services) and declare that retainer as income on their U.S. tax return. This method allowed clients to directly benefit from a part of their offshore income, albeit in a taxable form.

- Dummy invoicing was normally used by U.S.-based clients via their own offshore company or a Strachans entity to invoice a bogus service to an overseas third-party payor as a means of fraudulently diverting income offshore. However, it was also used as a means (similar to consultancy services) to give the U.S.-based client access to a limited part of their offshore funds albeit in a taxable form. This would be done by the client (or his accountant) providing invoices to Strachans for fictitious services which would be paid from the offshore funds using cashier's cheques so the actual source of the funds would remain undisclosed.

d.   Strachans' representatives met with U.S.-based clients in the United States, Switzerland, the United Kingdom, and elsewhere. During these meetings, Strachans provided the clients with receipts and payments and other accounting materials to review that did not include the clients' names. Strachans advised the U.S.-based clients that it was not in their interest to keep copies of these statements because doing so would increase the risk that their undeclared offshore assets would be discovered by the IRS.

e.   For a limited number of U.S.-based clients who sought an extraordinary level of confidentiality, Strachans, via its Shareholders, has held client funds in their own personal accounts. Generally, this would be created by funds being moved from the clients' existing offshore structure via a Strachans entity to the Strachans shareholder. Release of these funds back

to their beneficial owner would normally be achieved by a transfer back through an intermediary entity. This was done to obfuscate the true beneficial ownership of funds from the IRS.

f.  One or more U.S. taxpayer-clients of Strachans used the U.S. mails, private or commercial interstate carriers, or interstate wire communications to submit individual federal income tax returns to the IRS that were materially false and fraudulent in that these returns failed to disclose the existence of such taxpayers' undeclared accounts and the income earned in such accounts.

13. At all relevant times, Strachans was aware that U.S. taxpayers had a legal duty to report to the IRS, and pay taxes on the basis of, all their income, including income earned in accounts that these U.S.-based clients maintained with Strachans. Despite being aware of this legal duty, Strachans intentionally assisted U.S.-based clients in opening and maintaining undeclared accounts with the knowledge that, by doing so, Strachans was helping these U.S. taxpayers violate their legal duties. Strachans was aware that this conduct violated U.S. law.

14. The conduct of Strachans allowed it to increase its fees, and hence profit base by maintaining accounts involving undeclared assets and charging for administering those structures.

## MITIGATING FACTORS

15. Strachans, through the efforts of the Strachans Shareholders, has fully cooperated with the Department of Justice (the "Department"). Strachans engaged U.S. counsel and made a voluntary approach to the Department in May 2014. Strachans conducted an internal review in order to identify and collect data and information regarding its U.S.-taxpayer accounts. Strachans reported its findings to the Department, providing documentation supporting its findings. Each of the Strachans Shareholders submitted to voluntary interviews by the Department. Strachans also assisted the Department in preparing treaty requests under the Convention between the United States of America and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income (Oct. 2, 1996), and the Protocol Amending the Convention (Sept. 23, 2009) including by identifying U.S.-taxpayer accounts that may meet the standard for information exchange under the treaties.

EXHIBIT C

## **Certification of Authorization**

As of December 13, 2011, Philip J. Egglishaw was appointed liquidator of Stachans SA, in liquidation (Strachans SA). Under Swiss law, Mr. Egglishaw has all authority, rights and powers to bind Strachans SA. Attached hereto is an extract of the corporate register reflecting this appointment.

I, Philip J. Egglishaw, as liquidator of Strachans SA have authority to enter into the Plea Agreement between the United States Department of Justice and Strachans SA.

AUGUST 14, 2020

Philip J Egglishaw                                Date



http://rc.ge.ch

**Extrait avec radiations**

EXTRAIT INTERNET

| | |
|---|---|
| No réf. | 00469/2000 |
| N° féd. | CH-626.3.004.575-4 |
| **IDE** | **CHE-102.875.441** |

## Strachans SA, en liquidation

inscrite le 11 janvier 2000
Société anonyme

| Réf. | Raison Sociale |
|---|---|
| 1 | ~~Strachans SA~~ |
| 10 | Strachans SA, en liquidation |

| | Siège |
|---|---|
| 1 | Genève (précédemment à Lens) |

| | Adresse |
|---|---|
| 1 | carrefour de Rive 1, c/o Multifiduciaire Genève SA |

| | Dates des Statuts |
|---|---|
| 1 | 16.04.1999   05.01.2000 |

| | But, Observations |
|---|---|
| 1 | But:<br>prestation de conseils et services dans le domaine économique, fiscal et financier. |
| 10 | La société est dissoute par décision de l'assemblée générale du 08.12.2011. |
| 11 | L'identification sous le numéro CH-626-3004575-4 est remplacée par le numéro d'identification des entreprises (IDE/UID) CHE-102.875.441. |

| | Organe de publication |
|---|---|
| 1 | Communication aux actionnaires: FOSC ou par écrit s'ils sont tous connus |
| 1 | FOSC |

| Réf. | Capital-actions | | |
|---|---|---|---|
| | **Nominal** | **Libéré** | **Actions** |
| 1 | CHF 100'000 | CHF 100'000 | 100 actions de CHF 1'000, au porteur |

| Réf. | | | Administration, organe de révision et personnes ayant qualité pour signer | | |
|---|---|---|---|---|---|
| Inscr | Mod | Rad. | Nom et Prénoms, Origine, Domicile | Fonctions | Mode Signature |
| 1 | | m 5 | ~~Deléchat Pierre-Yves, de Carouge (GE), à Onex~~ | ~~adm.~~ | ~~signature individuelle~~ |
| 1 | | | "Multifiduciaire Léman SA" , à Lausanne | organe de révision | |
| 2 | | m 5 | ~~Egglishaw Richard Jepson, de Grande-Bretagne, à Genève~~ | ~~directeur~~ | ~~signature individuelle~~ |
| 3 | | 8 | ~~De Figueiredo Philip Eric, de Grande-Bretagne, à Jersey, GB~~ | ~~directeur~~ | ~~signature individuelle~~ |
| 4 | | m 9 | ~~Egglishaw Philip, de Grande-Bretagne, à Genève~~ | ~~directeur~~ | ~~signature individuelle~~ |
| 5 | 5 | m 6 | ~~Egglishaw Richard Jepson, de Grande-Bretagne, à Genève~~ | ~~adm. président~~ | ~~signature collective à 2~~ |
| 5 | | 10 | ~~De Weck Dominique, de Fribourg, à Genève~~ | ~~adm. vice-président~~ | ~~signature collective à 2~~ |
| | 5 | 10 | ~~Deléchat Pierre-Yves, de Carouge (GE), à Onex~~ | ~~adm. secrétaire~~ | ~~signature collective à 2~~ |
| | 6 | 9 | ~~Egglishaw Richard Jepson, de Grande-Bretagne, à Genève~~ | ~~adm. président~~ | ~~signature individuelle~~ |
| 6 | | 8 | ~~Jehan Terence A., de Grande-Bretagne, à Jersey, GB~~ | ~~directeur~~ | ~~signature individuelle~~ |
| 6 | | 7 | ~~Jaton Jérôme, de Villars-Mendraz, à Vevey~~ | ~~directeur~~ | ~~signature individuelle~~ |
| 7 | | 10 | ~~Dupanloup Rachel, de Laconnex, à Brenaz, F~~ | ~~directrice~~ | ~~signature individuelle~~ |
| | 9 | m 10 | ~~Egglishaw Philip, de Grande-Bretagne, à Genève~~ | ~~adm. président~~ | ~~signature individuelle~~ |

| Réf. | | | Administration, organe de révision et personnes ayant qualité pour signer | | |
|------|---|---|---|---|---|
| Inscr | Mod | Rad. | Nom et Prénoms, Origine, Domicile | Fonctions | Mode Signature |
| | 10 | | **Egglishaw** Philip, de Grande-Bretagne, à Genève | liquidateur | signature individuelle |

| Réf. | JOURNAL | | PUBLICATION FOSC | | Réf. | JOURNAL | | PUBLICATION FOSC | |
|------|---------|------|------------------|--------|------|---------|------|------------------|--------|
| | Numéro | Date | Date | Page/Id | | Numéro | Date | Date | Page/Id |
| 1 | 469 | 11.01.2000 | 17.01.2000 | 337 | 2 | 4466 | 17.04.2000 | 25.04.2000 | 2759 |
| 3 | 12549 | 24.11.2000 | 30.11.2000 | 8174 | 4 | 531 | 15.01.2001 | 23.01.2001 | 526 |
| 5 | 5928 | 25.05.2001 | 31.05.2001 | 4116 | 6 | 4262 | 22.04.2002 | 26.04.2002 | 7 |
| 7 | 12399 | 21.10.2004 | 27.10.2004 | 7/2516168 | 8 | 4911 | 01.04.2009 | 07.04.2009 | 11/4963266 |
| 9 | 19684 | 15.12.2009 | 21.12.2009 | 13/5405272 | 10 | 19868 | 13.12.2011 | 16.12.2011 | 6463186 |
| 11 | | Complément | 19.12.2013 | 7225832 | | | | | |

Genève, le 05 juin 2020

*Fin de l'extrait*

**Seul un extrait certifié conforme, signé et muni du sceau du registre, a une valeur légale.**